UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MICHAEL G. MULHERN, ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 05-2036 (PLF) |
| ROBERT M. GATES,[1] ) Secretary, United States Department of Defense, ) | |
| Defendant. ) | |

OPINION

This matter is before the Court on defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[2] Plaintiff alleges that his former employer, the National Reconnaissance Office, an agency within the Department of Defense, disclosed information about him without his consent and failed to provide access to records upon request in violation of the Privacy Act of 1974, 5 U.S.C. §§ 552a *et seq.* Upon consideration of the motion, the opposition, the reply, and the entire record in this case, the Court will grant defendant's motion for summary judgment with respect to the first claim and dismiss the second claim.

---

[1] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Secretary of Defense Robert M. Gates has been substituted for former Secretary Donald Rumsfeld.

[2] The papers submitted in connection with this matter are: Defendant's Motion for Summary Judgment [8] and [11] ("Def.'s Mot."); Plaintiff's Memorandum of Law in Response to Defendant's Motion for Summary Judgment [14] ("Pl.'s Opp."); and Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment [15] ("Def.'s Reply").

I.  BACKGROUND

*A.  The Investigation and the Disclosure*

Plaintiff Michael Mulhern, a polygraph examiner, was employed as a civilian security specialist at the National Reconnaissance Office ("NRO") of the United States Air Force from January 2001 until he resigned on December 3, 2004.  See Complaint ("Compl.") ¶ 2; id. ¶ 4.  Robert Shaheen, now retired, supervised plaintiff during the time period relevant to this suit.  See id. ¶ 5; Robert Shaheen Declaration ("Shaheen Decl.") ¶ 1.  During his employment at NRO, plaintiff received "outstanding performance reviews including a mid-year performance review of 'excellent' in January 2004."  Compl. ¶ 5.

In January of 2004, Mr. Shaheen telephoned plaintiff to tell him that Quality Assurance staff in the Polygraph Management Branch ("PMB") at NRO headquarters in Chantilly, Virginia had expressed concern about some of plaintiff's polygraph examinations.  See Shaheen Decl. ¶ 6.[3]  Specifically, Quality Assurance officers were "concerned Plaintiff was altering the results of his polygraph examinations" contrary to standard procedures.  Id.  In February 2004, Mr. Shaheen was instructed by his superiors to tell plaintiff to stop conducting polygraph examinations until an investigation into the matter could be completed.[4]  At this time, Mr. Shaheen's knowledge of the investigation was limited to what he had been told by Quality Assurance staff.  See id. ¶ 11.  Mr. Shaheen did not have access to the Polygraph Assessment Database, where Quality Assurance technical assessments were stored, and he did not have

---

[3]  "It is standard practice for [PMB Quality Assurance officers] to conduct periodic reviews of video taped polygraph examination sessions conducted by NRO polygraph examiners to ensure the quality and integrity of the examinations."  Shaheen Decl. ¶ 5.

[4]  Although plaintiff was barred from conducting examinations, he continued to receive full-time pay and benefits.  See Shaheen Decl. ¶ 9.

2

access to the PMB headquarter files. See id. ¶ 8. The only record concerning plaintiff to which Mr. Shaheen had access was Mr. Shaheen's supervisory file, which contained nothing but favorable information about plaintiff. See id.

In early March 2004, Mr. Shaheen contacted Steven Olson, then a security officer for Lockheed Martin in California.[5] From 1999 until 2001, when he and plaintiff worked for the same intelligence agency, Mr. Olson was plaintiff's supervisor. See Shaheen Decl. ¶ 10; Steven Breen Olson Declaration ("Olson Decl.") ¶ 1. In that telephone conversation, Mr. Shaheen asked Mr. Olson if he had ever experienced problems with the quality of plaintiff's work. See Shaheen Decl. ¶ 10.[6] Mr. Olson said that plaintiff had been a good examiner. See Olson Decl. ¶ 5. When Mr. Olson asked Mr. Shaheen why he wanted to know, Mr. Shaheen said that there was "a quality control issue with Plaintiff's polygraph examinations" and that plaintiff had been barred from conducting further examinations pending an internal investigation. Id.; see also Def.'s Mot. at 5; Michael G. Mulhern Decl. ("Mulhern Decl.") ¶¶ 2-3. Mr. Shaheen did not access any database or system of records in preparation for this conversation with Mr. Olson. See Shaheen Decl. ¶ 10. Mr. Olson did not relay the information he learned from Mr. Shaheen to any other Lockheed Martin employee. See Olson Decl. ¶ 6; Def.'s Reply at 2 (noting that plaintiff does not dispute this fact).

---

[5] Plaintiff argues that there is a dispute about the March 2004 date, suggesting that Mr. Shaheen may have contacted Mr. Olson as early as February 2004. See Pl.'s Opp. at 2. Plaintiff, however, relies for this proposition on Mr. Shaheen's declaration, which clearly states that Mr. Shaheen called Mr. Olson in March. See Shaheen Decl. ¶ 10. At any rate, it is difficult to see how this dispute is material given defendant's concession that Mr. Shaheen contacted Mr. Olson before plaintiff contacted Mr. Olson.

[6] Mr. Shaheen claims that his purpose in contacting Mr. Olson and inquiring about plaintiff's prior performance was to gather information so that he could advocate on plaintiff's behalf. See Shaheen Decl. ¶ 10.

In late March 2004, after he had called Mr. Olson, Mr. Shaheen was summoned to PMB headquarters for a full briefing regarding the internal investigation of plaintiff. See Shaheen Decl. ¶ 11. Beyond the telephone calls he received from Quality Assurance staff, Mr. Shaheen's participation in the investigation was limited to this late March briefing. Mr. Shaheen was not kept informed of the status of the investigation prior to or after the briefing, and he did not have conversations about plaintiff with any non-NRO employees at or after this time. See id.

In late April 2004, plaintiff told Mr. Shaheen that he was considering leaving NRO and that he intended to contact his former supervisor, Mr. Olson, as a potential employer and reference. See Mulhern Decl. ¶¶ 2-3. Mr. Shaheen told plaintiff that he had already spoken to Mr. Olson and told him "everything" he had known before his March 2004 briefing -- in other words, that plaintiff was being investigated for possible quality control issues and had been barred from conducting polygraph examinations. See id. ¶ 3; Olson Decl. ¶ 5; Def.'s Mot. at 5. Plaintiff subsequently called Mr. Olson.[7] In that telephone conversation, plaintiff said that he was not happy with his situation at NRO, but he did not say that he was under investigation. See id. ¶ 4. Plaintiff did not mention the investigation to Mr. Olson because he "knew that Mr. Shaheen had *already* disclosed the information to [Mr. Olson] without [his] consent, but [he] was not sure of what details [Mr. Olson] had been told, and did [not] want to discuss or confirm any of the details with [Mr. Olson], because [he] did not want him to know about it." Id.

---

[7] Plaintiff seems to think that there is a dispute about this timeline. See Pl.'s Opp. at 2 (arguing that a genuine issue of material fact exists as to whether Mr. Olson "knew of the investigation prior to, or following [Mr. Shaheen's] improper disclosure"). But in fact defendant does not dispute the version of events proffered by plaintiff and recounted above, see Mulhern Decl. ¶¶ 2-3, in which Mr. Shaheen tells Mr. Olson of the investigation before plaintiff tells Mr. Olson of the investigation. See Def.'s Reply at 3-4. The Court will treat as undisputed the fact that Mr. Olson first learned of the investigation from Mr. Shaheen, not from plaintiff.

(emphasis in original).

Between April 2004 and December 2004, plaintiff repeatedly asked Mr. Shaheen for information about NRO's internal investigation. He received "no report . . . or other resolution of the allegations" against him. Compl. ¶ 10. In June 2004, plaintiff retained attorney Michelle Perry to inquire into the status of the investigation. See id. ¶ 17. Ms. Perry contacted the NRO's Office of General Counsel but received no response. See id.

*B. Employment with Lockheed*

In or about February of 2004, plaintiff applied for a position with Lockheed Martin in Arizona. See Compl. ¶ 20; Daniel J. Engle Declaration ("Engle Decl.") ¶ 4. On July 6, 2004, he was interviewed by Daniel Engle, a senior security manager for Lockheed Martin. See Engle Decl. ¶ 4. Lockheed Martin offered plaintiff a position in late October 2004, and plaintiff accepted it on November 1, 2004. See id. ¶ 6. The position required up-to-date government-sponsored security clearances. See id. Plaintiff had already informed Mr. Engle at their July interview that plaintiff's clearances were partially outdated and would have to be reinstated. See id. ¶ 4. As the United States employed plaintiff at the time, Mr. Engle assumed that the government would update and reinstate plaintiff's clearances prior to plaintiff's start date. See id. ¶ 6. On November 14, 2004, plaintiff submitted paperwork to obtain the required security clearances. See id. Plaintiff started work at Lockheed Martin in December 2004 while awaiting reinstatement of his clearance. See id. ¶ 7.

In January 2005, Mr. Engle contacted NRO to determine why plaintiff's clearances had not yet been processed. See Engle Decl. ¶ 9. He was told that "[p]laintiff's Periodic Review was out-of-scope, that [plaintiff] had failed to complete his SF-86 during his

NRO employment, and that there were issues which were being closely held by NRO Personnel Security." Id. Based on this information, Mr. Engle decided to let the security processing "run its course." Id. In February or March 2005, Mr. Engle again inquired as to the status of plaintiff's security processing, at which point he was advised that additional information was needed prior to a "final adjudication" of the request. Id. ¶ 10. Plaintiff apparently was unaware of the delay and the reasons for it. See Compl. ¶ 23.

In April 2005, Mr. Engle consulted with his supervisor in Colorado regarding the need to fill plaintiff's position with a properly cleared individual. See Engle Decl. ¶ 11. At that time, according to Mr. Engle, Lockheed decided to terminate plaintiff because of his failure to obtain the required clearance within a reasonable period of time. See id. Plaintiff was officially terminated on or about April 15, 2005. See id. ¶ 12.

On October 17, 2005, plaintiff brought suit, alleging two discrete violations of the Privacy Act. First, plaintiff contended that defendant violated Section 522a(b) of the Act because Mr. Shaheen improperly disclosed protected information to Mr. Olson without plaintiff's consent. See Compl. at 9.[8] Second, plaintiff claimed that defendant violated § 522a(d) of the Act by refusing to release information and documents pertaining to NRO's internal investigation despite plaintiff's and plaintiff's counsel's repeated requests for access. See id.[9] Defendant filed

---

[8] Section 522a(b) of the Privacy Act provides, in relevant part, that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless" certain exceptions apply. 5 U.S.C. § 522a(b).

[9] Section 522a(d) of the Privacy Act provides, in relevant part, that each agency shall, "upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any

a motion for summary judgment on November 6, 2006, arguing that plaintiff could not make out a *prima facie* case of improper disclosure under the Privacy Act because Mr. Shaheen did not disclose "record" information retrieved from a "system of records" as required by the Act, and because Mr. Shaheen's disclosures, even if improper, did not give rise to any actual damages. See Def.'s Mot. at 6-8. Defendant further argued that plaintiff's improper withholding claim must fail because plaintiff did not exhaust administrative remedies as required by the Act and applicable regulations. See id. at 8-9.

## II. GOVERNING LAW

### A. Summary Judgment

Summary judgment may be granted only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-movant. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895.

When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [his] favor."

---

portion thereof in a form comprehensible to him . . . ." 5 U.S.C. § 522a(d)(1).

Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006); Aka v. Washington Hosp. Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc); Washington Post Co. v. United States Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989). The Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007). The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); see Scott v. Harris, 127 S. Ct. 1769, 1776 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The non-moving party is required to provide affirmative evidence that would permit a reasonable jury to find in his favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 127 S. Ct. at 1776 ("where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial'") (quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. at 586-87). To defeat a motion for summary judgment, a plaintiff must have more than "a scintilla of evidence to support [his] claims." Freedman v. MCI Telecomm. Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).

B. *The Privacy Act*

1. Improper Disclosure

The Privacy Act "safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records . . . by allowing an individual to participate in ensuring that his records are accurate and properly used." Bartel v. Fed. Aviation Admin., 725 F.2d 1403, 1407 (D.C. Cir. 1984). One way the Act accomplishes this goal is by prohibiting nonconsensual disclosures of any "record" about an individual that is contained in a "system of records." 5 U.S.C. § 552a(b).[10]

Plaintiff seeks monetary damages, costs and attorneys' fees for nonconsensual disclosure under Section 522a(g)(1)(d) of the Privacy Act (providing a "catch all" cause of action for plaintiffs adversely affected by an agency's failure to abide by any of the Act's substantive provisions) and Section 522a(g)(4) of the Privacy Act (limiting monetary relief in such suits to cases in which the agency's action was "intentional or willful" and the plaintiff suffered "actual damages"). To prevail on a claim of nonconsensual disclosure for monetary damages, a plaintiff must show that "(1) the disclosed information is a 'record' contained within a 'system of records'; (2) the agency improperly disclosed the information; (3) the disclosure was willful or

---

[10] A "record" is any grouping of information "about an individual" that is maintained by an agency and contains a person's name or other personal identifier. 5 U.S.C. § 552a(a)(4). A "system of records" is a group of records "under the control of an agency" from which information "is retrieved" by the name of the person or some other personal identifier. 5 U.S.C. § 552a(a)(5). Determining that a system of records exists from which the record at issue was retrieved is a prerequisite to a substantive Privacy Act claim. See Henke v. United States Dep't of Commerce, 83 F.3d 1453, 1459 (D.C. Cir. 1996) (observing that "the determination that a system of records exists triggers virtually all of the other substantive provisions of the Privacy Act"). In this case, the parties do not dispute that the investigative files maintained by PMB constitute records maintained within a system of records for purposes of the Act, and so the Court assumes that they do.

intentional; and (4) the disclosure adversely affected the plaintiff." Logan v. Dep't of Veterans Affairs, 357 F. Supp. 2d 149, 154 (D.D.C. 2004); see also Fisher v. Nat'l Inst. of Health, 934 F. Supp. 464, 468 (D.D.C. 1996). If these prerequisites are met, the plaintiff may recover monetary damages, costs and fees if -- and only if -- he can further establish that he sustained "actual damages" as a result of some harm caused by the agency's disclosure. See Doe v. Chao, 540 U.S. 614, 620-21 (2004) (interpreting 5 U.S.C. § 522a(g)(4)).

In Doe, the Supreme Court carefully distinguished between "adverse effect" and "actual damages." There, the petitioner argued that he needed to show only that he suffered an adverse effect caused by intentional or willful agency action in order to establish an entitlement to damages. He reasoned that "it would have been illogical for Congress to create a cause of action for anyone who suffers an adverse effect from intentional or willful agency action, then deny recovery without actual damages." Doe v. Chao, 540 U.S. at 624. The Supreme Court disagreed, explaining that

> [t]he reference in § 552a(g)(1)(D) to "adverse effect" acts as a term of art identifying a potential plaintiff who satisfies the injury-in-fact and causation requirements of Article III standing, and who may consequently bring a civil action without suffering dismissal for want of standing to sue. . . . That is, an individual subjected to adverse effect has injury enough to open the courthouse door, but *without more has no cause of action for damages under the Privacy Act*.

Id. at 624-25 (emphasis added). In other words, a plaintiff seeking monetary damages for an agency's improper disclosure must establish *not only* that he was "adversely affected" by the improper disclosure, *but also* that he suffered "some harm for which damages can reasonably be assessed." Id. at 621; see also id. at 625-26 (explaining that Congress made recovery contingent on a showing of actual damages to avoid "giveaways to plaintiffs with nothing more than

10

'abstract injuries'").

Notably, the Privacy Act does not prohibit *all* nonconsensual disclosures of information found in an individual's records. For one thing, there are several statutorily delineated exceptions under which covered agencies may disclose covered records.[11] For another, even when those exceptions do not apply, liability for nonconsensual disclosure is limited by what is often called the "retrieval rule." That rule has been summarized as follows:

> As a general rule, courts have held that the Privacy Act only covers disclosures of information which was either directly or indirectly retrieved from a system of records. . . . As the Tenth Circuit held, "[t]he disclosure of information derived solely from independent sources is not prohibited by the statute even though identical information may be contained in an agency system of records." [quoting Thomas v. United States Dep't of Energy, 719 F.2d at 345.]

Fisher v. Nat'l Inst. of Health, 934 F. Supp. at 473 (internal citations omitted). In other words, even if an official discloses information that exists in the agency's records, the disclosure is rarely actionable unless the official physically retrieved the information from those records. If the official's knowledge of the disclosed information derives from sources that are not protected "records," then the disclosure rarely implicates the Privacy Act. See, e.g., Doe v. Dep't of Veterans Affairs, 474 F. Supp. 2d 1100, 1102-03 (D. Minn. 2007) (doctor did not violate Privacy Act when he disclosed private medical information contained in plaintiff's protected records because doctor learned the information from conversations with plaintiff, not by consulting the records).[12]

---

[11] See 5 U.S.C. § 522a(b)(1)-(12). The parties have not suggested that any of these exceptions applies, so the Court will assume that none do.

[12] It is worth noting that the D.C. Circuit has declined to apply the retrieval rule inflexibly when doing so would eviscerate the protections of the Privacy Act. The most

2. Improper Withholding

The Privacy Act also prohibits covered agencies from improperly denying access to records they maintain.  See 5 U.S.C. § 552a(d)(1).  Individuals who believe they have been wrongly denied access to records pertaining to them may bring a civil action to compel the agency to disclose the records.  See 5 U.S.C. § 552a(g)(1)(B) (creating cause of action for improper withholding); id. § 522a(g)(3)(A)-(B) (outlining relief available in such an action).  In this case, plaintiff seeks an order compelling defendant to provide access to all records related to NRO's internal investigation of him and the results of the reinvestigation conducted for his security clearance in January 2005.  See Compl. at 10.

This civil remedy, however, is not without conditions.  Most importantly, a plaintiff must exhaust his administrative remedies before bringing such a claim.  See 5 U.S.C. § 522a(d)(1)-(3); id. § 522a(g)(1)(A)-(B); Haase v. Sessions, 893 F.2d 370, 373 (D.C. Cir. 1990).

---

prominent example of the D.C. Circuit's distinctive approach is Bartel v. Fed. Aviation Admin., 725 F.2d 1403 (D.C. Cir. 1984).  In Bartel, an agency official and supervisor of plaintiff Bartel ordered an investigation of Bartel.  That investigation resulted in an investigative file that constituted a "record" within a "system of records."  The supervisor later reported the contents of the file to third parties without Bartel's permission.  See id. at 1405-08.  Plaintiff brought suit under the nondisclosure provisions of the Privacy Act.  Defendant argued that there was no violation of the Act because the supervisor never consulted the physical record of the investigation before disclosing its contents.  See id. at 1407.  The district court agreed and dismissed plaintiff's complaint, but the D.C. Circuit vacated the dismissal and remanded for further proceedings.  See id. at 1416.  In doing so, the court of appeals reasoned that applying the retrieval rule under such circumstances would "deprive the Act of all meaningful protection of privacy," id. at 1411, because it would allow officials to circumvent the Act's nondisclosure provisions "by simply not reviewing [a covered record] before reporting its contents or conclusions."  Id. at 1409.

While it is not entirely clear how broad Bartel's exception to the retrieval rule was intended to be, it is at least clear that the Privacy Act's nondisclosure provisions may be triggered "even though the underlying records themselves were never released and the agency official releasing the information [claims] knowledge of the facts disclosed independent of any record."  Chang v. Dep't of the Navy, 314 F. Supp. 2d 35, 41 (D.D.C. 2004).

To properly exhaust administrative remedies, a plaintiff must submit a Privacy Act request to the agency and seek review within the agency under the agency's regulations.  See 5 U.S.C. § 522a(e)-(f) (requiring covered agencies to establish regulations governing such requests); Thorn v. Social Sec. Admin., Civil Action No. 04-1282, 2005 WL 1398605, at *3 (D.D.C. June 11, 2005).  Premature Privacy Act suits are dismissed for lack of subject matter jurisdiction.  See Dickson v. Office of Pers. Mgmt, 828 F.2d 32, 40-41 (D.C. Cir. 1987); Nurse v. Sec'y of the Air Force, 231 F. Supp. 2d 323, 327 (D.D.C. 2002); Colon v. Executive Office for United States Attorneys, Civil Action No. 98-0180, 1998 WL 695631, at *2 (D.D.C. Sept. 29, 1998).

### III.  DISCUSSION

#### A.  Improper Disclosure Claim

Plaintiff claims that defendant violated the nondisclosure provisions of the Privacy Act when Mr. Shaheen told Mr. Olson that plaintiff was under investigation and barred from conducting examinations.  See Compl. at 9-10.  Defendant argues that it is entitled to summary judgment on this claim for several reasons.  First, defendant argues that the Privacy Act prohibits only disclosures of record information, and no "information from any record contained in a system of records was disclosed in this case" because Mr. Shaheen conveyed only the fact that an investigation had been commenced.  Def.'s Mot. at 6-7.  Second, and relatedly, defendant argues that plaintiff's claim fails because it is undisputed that Mr. Shaheen "did not consult any record or system of records before or during his conversation" with Mr. Olson.  Id. at 7.  In essence, this is an argument that the retrieval rule bars plaintiff's claim; it therefore would be analyzed in light of the D.C. Circuit's decision in Bartel.  See *supra* at 11 & n.12.  Third, defendant argues that plaintiff has not shown and cannot show that he suffered any harm for

which damages can reasonably be assessed as a result of Mr. Shaheen's disclosure. He therefore cannot succeed on his claim for monetary damages, costs and fees. Def.'s Mot. at 7. The Court agrees with defendant's third argument, and so addresses the other two only in passing.

As discussed above, in order to recover monetary damages, costs and fees for nonconsensual disclosure, a plaintiff must show (1) that an agency disclosed protected information; (2) that the disclosure was improper (*e.g.*, did not fall under a statutorily delineated exception); (3) that the agency's disclosure was intentional or willful; (4) that the plaintiff suffered an adverse effect as a result of the disclosure; and (5) that the plaintiff sustained "actual damages" as a result of the disclosure. See *supra* at 9-11. The Court concludes that plaintiff's claim must fail because he has not offered evidence sufficient to withstand summary judgment with respect to the third and fifth elements.[13]

First, plaintiff has failed to offer any evidence that NRO's disclosure was

---

[13] Plaintiff's claim that NRO's behavior caused him to experience emotional distress is sufficient to establish an "adverse effect" of the sort required to confer standing. See Rice v. United States, 2007 WL 2410360, at *6 (plaintiffs' declarations to the effect that agency's disclosures caused them to suffer "anger, dismay, anxiety, and fear about what has occurred and what could happen" established requisite adverse effect). As in Rice, see id. at *3, the defendant here does not appear to contest the veracity of plaintiff's statement that he was emotionally distressed; rather, defendant appears to argue that those allegations do not establish that plaintiff suffered harm to his emotional health for which damages can be assessed. See Def.'s Mot at 7. The Court deals with that aspect of plaintiff's claim below.

Similarly, plaintiff's claim that NRO's behavior sullied his professional reputation is sufficient to establish his standing to sue. Plaintiff specifically identifies an adverse effect he suffered as a result of NRO's disclosure. See Mulhern Decl. ¶ 5 (stating, among other things, that Mr. Shaheen's disclosure undermined plaintiff's professional relationship with Mr. Olson, who was plaintiff's most promising reference and source of new employment). Viewing the statements from the declarations of Mr. Mulhern and Mr. Olson in combination, a reasonable jury could justifiably infer that plaintiff's professional relationship with Mr. Olson was adversely affected. The problem for plaintiff, as defendant appears to argue, is that plaintiff's allegations do not establish that plaintiff suffered any tangible harm to his professional stature and reputation, and thus to his career, for which damages can be assessed. See Def.'s Reply at 4-5.

"intentional or willful."  See 5 U.S.C. § 552a(g)(4).  An agency acts intentionally or willfully when it acts without grounds for believing its actions are lawful (*i.e.*, in a way that, in the context of the case, is "so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful") or flagrantly disregards rights guaranteed under the Act.  Laningham v. United States Navy, 813 F.2d at 1242 (internal citations and quotation marks omitted); see also Albright v. United States, 732 F.2d 181, 189 n.25 (Privacy Act makes government liable "for violations caused by its gross negligence").  At the summary judgment stage, plaintiff bears the burden of coming forward with affirmative evidence supporting an allegation of intentional or willful conduct by the agency.  See Laningham v. United States Navy, 813 F.2d at 1242; see also Hill v. United States Air Force, 795 F.2d 1067, 1070 (D.C. Cir. 1986).  Plaintiff cannot avoid summary judgment with evidence that "the government handled a matter in a [merely] disjointed or confused manner, or . . . acted inadvertently to contravene the Act."  Velikonja v. Mueller, 362 F. Supp. 2d 1, 18 (D.D.C. 2004) (quoting Waters v. Thornburgh, 888 F.2d 870, 875-76 (D.C. Cir. 1989), *abrogated on other grounds*, Doe v. Chao, 540 U.S. 614 (2004)) (internal citations and quotation marks omitted).  Summary judgment is proper where the agency presents evidence explaining its conduct and its grounds for believing its actions lawful and plaintiff fails to controvert that evidence.  See Laningham v. United States Navy, 813 F.2d at 1242-44.

    Here, defendant has offered Mr. Shaheen's sworn declaration which suggests that Mr. Shaheen's intent in discussing plaintiff's employment situation with Mr. Olson was to gather information in order to advocate on plaintiff's behalf.  See Shaheen Decl. ¶ 10.  Mr. Shaheen's statement, read in light of the factual context of this case, tends to show that the disclosure at issue was not made in an intentional or willful manner.  More specifically, Mr. Shaheen's

declaration indicates that Mr. Shaheen may have, at most, "inadvertently contraven[ed]" the Act while attempting to assist plaintiff. Velikonja v. Mueller, 362 F. Supp. 2d at 18 (offering evidence that government violated the act inadvertently, without more, is not enough to preclude summary judgment on the issue of government's intent). Plaintiff, for his part, has failed to offer any evidence undermining this account of Mr. Shaheen's intentions or tending to show that the disclosure was made "intentionally or willfully." See Thompson v. Dep't of State, 400 F. Supp. 2d 1, 12-13 (D.D.C. 2005) (summary judgment appropriate where plaintiff "offered no evidence to undercut defendant's explanations of its conduct or affirmatively prove intent"). Nor can the Court conclude, from the declarations presented, that a reasonable jury could find that NRO's actions were grossly negligent, that the agency flagrantly disregarded plaintiff's rights, or that Mr. Shaheen was without grounds for believing his actions were lawful. See Laningham v. United States Navy, 813 F.2d at 1243; Hill v. United States Air Force, 795 F.2d at 1070.[14] Plaintiff therefore has failed to create any genuine issue for trial with respect to whether NRO acted intentionally or willfully.

    Second, plaintiff has failed to establish that he is entitled to actual damages. At one time or another, plaintiff has put forth three distinct theories as to how he has sustained actual damages as a result of the harm caused by NRO's disclosure. First, he has argued that the disclosure was the proximate cause of his dismissal from Lockheed. See Compl. ¶¶ 26-28. Second, he has argued that the disclosure has sullied his professional reputation and harmed his

---

[14]  Mr. Shaheen appears to have assumed that the information he shared with Mr. Olson did not implicate any privacy concerns because he disclosed no details about the investigation (and perhaps because it is not uncommon for polygraph examiners to be reviewed or investigated). See Shaheen Decl. ¶ 5; id. ¶ 10. The Court cannot conclude that such an assumption is baseless or reckless, or that it indicates a flagrant disregard for plaintiff's rights -- especially in light of Mr. Shaheen's purported intent *to help* plaintiff. See id. ¶ 10.

career prospects.  See id. ¶ 19; Pl.'s Opp. at 3; Mulhern Decl. ¶ 5.  Third, he has argued that the disclosure caused him "great distress and embarrassment."  Mulhern Decl. ¶ 5.  Plaintiff no longer relies on the first theory.[15]  The other two related theories are not supported by evidence sufficient to withstand summary judgment.

    As the D.C. Circuit has noted, summary judgment for a defendant is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving affidavit or declaration.  See Johnson v. Washington Metropolitan Area Transit Authority, 833 F.2d 125, 128 (D.C. Cir. 1989).  While on summary judgment the Court must accept as true the non-movant's *factual assertions* and all reasonable inferences therefrom, a non-moving party is obligated to produce affirmative evidence supporting the challenged aspects of his claims by affidavit or other competent evidence setting forth "specific facts" sufficient to allow a reasonable jury to find in the non-movant's favor.  See FED. R. CIV. P. 56(e).  A plaintiff may not rely "on conclusory allegations or unsubstantiated speculation."  Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 428 (2d Cir. 2001).  "[A] mere unsubstantiated allegation . . . creates no 'genuine issue of fact'

---

[15] In his complaint, plaintiff asserts that Lockheed's stated reason for terminating him was pretextual, and alleges that he was terminated because Lockheed senior management learned of the internal NRO investigation from Mr. Shaheen, Mr. Olson, or someone they told of the investigation.  See Compl. ¶¶ 26-28.  In his opposition to defendant's motion for summary judgment, however, plaintiff did not dispute defendant's claim, see Def.'s Mot. at 7-8; Engle Decl. ¶ 11, that he was fired for failure to obtain the necessary security clearances.  See Pl.'s Opp. at 3 (failing to contradict defendant on this point and arguing instead that plaintiff has suffered compensable damage to his professional reputation "[e]ven if Defendant's actions did not lead directly to the loss of his employment at Lockheed Martin").  On a motion for summary judgment, the Court may assume that the non-moving party has conceded the moving party's statement of facts unless the non-moving party specifically controverts the moving party's statement.  See L. R. CIV. P. 56.1.  Thus, the Court will assume that plaintiff no longer disputes the fact that Lockheed fired him because he failed to obtain certain security clearances, not because defendant's disclosures were the proximate cause of his termination by Lockheed.  In any event, this theory would not have survived summary judgment because plaintiff offered no evidence for the claim that he was fired because of the disclosure.

and will not withstand summary judgment." Harding v. Gray, 9 F.3d at 154.

In this case, plaintiff has failed to offer any specific evidence that he is entitled to money damages as a result of the asserted harm to his reputation or professional status. See Doe v. Chao, 540 U.S. at 621-23 (Privacy Act incorporates "the traditional understanding that tort recovery requires not only wrongful act plus causation reaching to the plaintiff, but proof of some harm for which damages can reasonably be assessed"). Plaintiff's evidence for the claim that NRO's disclosure caused harm to his career for which damages can be assessed is limited to a few conclusory sentences in his personal declaration, in which he states that Mr. Olson's knowledge of the investigation harmed his "professional reputation and stature in the security professional community." Mulhern Decl. ¶ 5. This self-serving, unsupported statement, standing alone, is insufficient to defeat a motion for summary judgment. See Doe v. Gates, 981 F.2d 1316, 1323 (D.C. Cir. 1993); Hopps v. Washington Metropolitan Area Transity Authority, 480 F. Supp. 2d 243, 244 n.9 (D.D.C. 2007). Thus, to the extent that plaintiff's claim depends on the assertion that NRO's disclosure did compensable damage to his professional reputation, it cannot survive summary judgment.

Plaintiff's claim that he suffered compensable mental and emotional distress fares no better. To defeat a motion for summary judgment, a plaintiff must offer evidence sufficient for a jury to find that the emotional harm he claims to have suffered was acute, tangible, and severe enough to give rise to actual damages. See Doe v. Chao, 306 F.3d 170, 1080-82 (4th Cir. 2002) (plaintiff's conclusory allegation that he was "torn . . . all to pieces" and "greatly concerned and worried" by the agency's disclosure was insufficient to create a triable issue of fact with respect to actual damages), *aff'd*, 540 U.S. 614 (2004); Rice v. United States, 2007 WL

2410360 at *3-4 (plaintiffs' declarations to the effect that they suffered "anger, dismay, anxiety and fear" as a result of disclosures did not allege injuries severe or specific enough to withstand summary judgment on issue of actual damages). As Judge Robertson has explained, there is no authority for the proposition that "cursory descriptions of emotional harm [support] a finding of 'actual damages' under the Privacy Act." Rice v. United States, 2007 WL 2410360, at *3-4. Again, plaintiff's evidence for the claim that NRO's disclosure caused harm to his mental health for which damages can be assessed is limited to a few conclusory sentences in his personal declaration, in which he states that the disclosure "caused [him] great distress and embarrassment." Mulhern Decl. ¶ 5. He provides no "specific facts," FED. R. CIV. P. 56(e), to support his improper disclosure claim, and it therefore cannot survive summary judgment.

### B. Improper Withholding Claim

Plaintiff claims that defendant violated Section 552a(d)(1) of the Privacy Act when it failed to provide access to records concerning the investigation of plaintiff. See Compl. at 9. Defendant responds that it is entitled to summary judgment on this claim because plaintiff failed to exhaust his administrative remedies before bringing suit as required by the Act and applicable regulations. See Def.'s Mot. at 8. As noted above, a plaintiff must exhaust the administrative remedies established by an agency's Privacy Act regulations before bringing suit under Section 522a(d)(1). The NRO's Privacy Act regulations clearly state that requests for access must be submitted in writing to the Privacy Act Coordinator.[16] Here, defendant claims --

---

[16] Those regulations provide:

> An individual seeking notification of whether a system of records contains a record pertaining to him, or an individual seeking access to records pertaining to him which are available under the Privacy

and plaintiff does not dispute -- that plaintiff failed to submit a proper request for access under NRO's Privacy Act regulations.  See Def.'s Mot. at 8; Declaration of Linda S. Hathaway ("Hathaway Decl.") ¶ 3 (stating that "a thorough search of [the NRO Freedom of Information Act and Privacy Act Office's] tracking database reveals that Plaintiff has not submitted a request for documentation" to the office).  Since plaintiff failed to exhaust his administrative remedies, this claim must be dismissed for lack of subject matter jurisdiction (and without prejudice).  See Dickson v. Office of Pers. Mgmt, 828 F.2d at 40-41; Nurse v. Sec'y of the Air Force, 231 F. Supp. 2d at 327; Colon v. Executive Office for United States Attorneys, 1998 WL 695631, at *2.

## IV.  CONCLUSION

The Court concludes that the defendant is entitled to summary judgment on plaintiff's improper disclosure claim.  Plaintiff's claim for improper withholding is dismissed without prejudice for lack of subject matter jurisdiction.  An Order and Judgment consistent with this Opinion shall be issued this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: December 4, 2007

---

Act, shall address the request in writing to the Privacy Act Coordinator, National Reconnaissance Office, 14675 Lee Road, Chantilly, VA 20151-1715.

32 C.F.R. § 326.8.